**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TYRONE GOODWIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 2:17-cv-01537 |
| v. | ) | |
| | ) | |
| JANE E. MILLER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

**Mark R. Hornak, Chief United States District Judge**

Plaintiff Tyrone Goodwin lived in a formerly federally subsidized property in the Homewood neighborhood of Pittsburgh. When the conditions of the property declined significantly, HUD terminated the subsidy contract with the property's former owner. The tenants were offered relocation benefits and a tenant protection voucher, and the owner sold the property to a new owner. Plaintiff brought this lawsuit against HUD and its Field Office Director, the Managing Director of HUD's Relocation Contractor, the former property owner, the former property manager, the Housing Authority of the City of Pittsburgh, and its Executive Director, in an effort to remain in his unit despite the unsanitary and unsafe conditions, and to force rehabilitation of the unit. Plaintiff, with HUD's assistance, has since moved to a new apartment less than half a mile away. For the reasons that follow, Defendants' Motions to Dismiss will be granted in part and denied in part.

## I.  BACKGROUND

### A.  Facts[1]

Plaintiff Tyrone Goodwin lived at 7704 Tioga Street at the Bethesda-Homewood Properties ("the Property"). (4th Am. Compl. ("4th Am. Compl." or "Complaint"), ECF No. 81, ¶ 17.)  Plaintiff is a low-income renter and is eligible to receive rent subsidies through the project-based Section 8 program. (*Id.*) Through this program, Plaintiff paid 30% of his adjusted gross income to the landlord, and the United States Department of Housing and Urban Development ("HUD") paid the remaining cost of the rent. (*Id.*)

Homewood Residential, LP ("Homewood") owned the Property, a collection of 141 apartment units spread across the east side of Pittsburgh. (*Id.* ¶ 40.) The contract between the United States Department of Housing and Urban Development ("HUD") and Homewood was a project-based Section 8 contract. (*Id.* ¶ 2.) Aishel Real Estate ("Aishel") was the management company for the Property during the time Homewood owned the Property. (*Id.* ¶ 24.) At some point following the events described in the Complaint, Homewood sold the property to Esperanza Homewood, LLC ("Esperanza"). (*Id.* ¶ 1 n.1.)

From 2014–2017, the Property's physical conditions deteriorated, as evidenced by failing Real Estate Assessment Center ("REAC") inspections and Plaintiff's personal account of the poor conditions in his unit. (*Id.* ¶ 45–50.) The Property failed an REAC inspection, receiving a failing score of "35c*" on April 8, 2014, causing Homewood (the owner) to default on the Housing Assistance Payments ("HAP") Contract and prompting HUD action. (Declaration of Jennifer Larson, Director of Multifamily Asset Management and Portfolio Oversight ("Larson Decl."), ¶ 9.) HUD advised Homewood that repairs must be made in a timely manner or

---

[1] The Court draws the facts from Plaintiff's Fourth Amended Complaint (ECF No. 81,) and Federal Defendants' Exhibits to their Brief in Support of their Motion to Dismiss (ECF Nos. 93–1-12).

enforcement actions would be taken against Homewood. (*Id.*) HUD issued a $2,000 civil penalty for failure to file required documents on August 1, 2016. (*Id.* ¶ 10.) REAC inspected the Property again on December 2, 2016, and the Property received another failing score of 9c*. (4th Am. Compl., at 50, Ex. F.) On December 14, 2016, HUD also conducted a Management and Occupancy Review and rated the management "unsatisfactory." (Larson Decl., ¶ 12.) After that inspection, HUD issued a Notice of Default and Compliance, Disposition, and Enforcement Plan ("CDE Plan") to Homewood on February 8, 2017 (4th Am. Compl. ¶ 50.) That Notice required Homewood to address the unacceptable conditions at the Property within sixty (60) days and to replace the management agent at the Property. (*Id.* at page 48; Ex. B.)

A CDE Plan requires the owner to:

- Conduct a survey of 100% of the project, identifying all physical deficiencies;
- Correct the physical deficiencies identified at the project from the survey, including, but not limited to, those deficiencies identified in the REAC inspection;
- Execute a certification that the project is in compliance with HUD's physical condition standards as set forth in 24 C.F.R. § 5.703 and state and local codes and submit the survey and certification to HUD; and
- Provide tenants with a "Notice of Compliance, Disposition and Enforcement Plan" for the project, and provide HUD with a certification of same.

*See* HUD Housing Notice 2015-02, at 4 (Mar. 2, 2015), https://www.hud.gov/sites/documents/ 15-02HSGN.PDF

Homewood represented to HUD that it was seeking funding and a contractor capable of repairing the Property. (Larson Decl., ¶ 13.) HUD re-inspected the Property in July of 2017, resulting in a score of 15c*. (4th Am. Compl, at 50, Ex. F.) The inspection found multiple physical deficiencies, including tripping hazards, cracks and gaps in the walls, exposed electrical wires, inoperable auxiliary lighting, damaged hardware on locks and doors, and cockroach and insect infestation. (4th Am. Compl, ¶ 51, 55–61, Ex. J.) The inspection identified health and

safety deficiencies requiring immediate attention and certification of repair within three (3) days of the REAC inspection report. (*Id.*)

Plaintiff communicated directly with HUD staff throughout 2017 about the deteriorating conditions of the Property. (4th Am. Compl, ¶ 49, 51, Ex. H.) On August 8, 2017, he expressed his dissatisfaction with Homewood's failure to remediate the conditions of the Property. (*Id.*) HUD also found the conditions to be unacceptable and further ordered Homewood to rehabilitate the Property. (Larson Decl, at ¶ 15, Ex. B.) Homewood remained non-responsive.

HUD is limited to the enforcement actions available to it by statute and contract. HUD cannot force compliance. (Larson Decl., at ¶¶ 9–16.) Termination is typically a last resort, and used only if an owner refuses to comply with HUD's repeated demands. Here, termination was the only available remedy. (*Id.* at 15.)

HUD issued a Notice of Enforcement on September 13, 2017, informing Homewood that HUD would be terminating the HAP Contract. (*Id.* ¶ 16.) HUD provided notice of a tenant meeting on September 29, 2017, during which it informed the tenants of the termination. (*Id.*, at 17.) HUD contracted with a Relocation Contractor, Leumas Residential ("Leumas"), who provided every tenant with relocation benefits and a voucher, and worked with the Pittsburgh Housing Authority, which administers the vouchers, to ensure that every tenant who chose to utilize the relocation benefits could do so. (*See* 4th Am. Compl., ¶¶ 76–81, 66–67; Ex. U, at 68–73; Ex. V.)

On October 18, 2017, Plaintiff met with Leumas and signed an Agreement to Relocate Statement. (Larson Decl. ¶ 20.) Plaintiff accepted two checks totaling $300.00 for relocation assistance, as well as a tenant protection voucher that enabled him to move to a unit that was decent, safe, and sanitary. (*Id.* ¶ 21.) Leumas worked directly with Plaintiff to locate units that

accept vouchers and to contact the landlords for those units. Plaintiff deposited at least one relocation benefits check and signed the form accepting his voucher. (*Id.* ¶¶ 20–21.) Plaintiff continued to engage with Leumas for several months after filing this litigation. (*Id.* ¶ 21.) Finally, in December of 2017, he told Leumas that he would not move. (*Id.* ¶ 23.) Leumas continued to attempt to remain in communication with Plaintiff throughout the remaining relocation period, until April 2018, but did not receive a response. (*Id.* ¶¶ 23–24.)

On June 28, 2018, this Court denied Plaintiff's Motion for a Preliminary Injunction and ordered the parties "to assess any available tenant support options to facilitate Mr. Goodwin's housing situation in Homewood and . . . file a Status Report on the docket pertaining to those mattes." (Order, ECF No. 71.) HUD sent Plaintiff a list of several units available in Pittsburgh and reopened its contract with Leumas. (Status Report of Federal Defendants, ECF No. 76, ¶¶ 4–5.) Leumas attempted to contact Plaintiff, to no avail. (*Id.* ¶ 10.) Plaintiff refiled his Motion for Preliminary Injunction, and when the Court again denied his Motion, appealed the decision. (ECF No. 82.) On July 30, 2018, Plaintiff filed his Fourth Amended Complaint. (ECF No. 81.)

In mid-July, 2018, HUD again offered services, including relocation assistance and benefits, to Plaintiff, and he accepted them in September of 2018. (Decl. of Jovanna Morales ("Morales Decl."), ECF No. 127–2, ¶¶ 11 & 12.). Plaintiff identified a newly constructed apartment in Homewood as a potential residence close to his then-current residence. (*Id.* ¶ 12.) The address was given to HACP for inspection and approval for use with a tenant protection voucher. (*Id.*)

In October and November, 2018, after several inspections, HACP concluded that the new apartment met the applicable housing quality standards and authorized the use of a voucher

there. (*Id.* ¶ 13.) On November 16, 2018, Plaintiff moved into his new unit in Homewood, about 0.4 miles from his former apartment. (*Id.* ¶ 14.)

HUD also successfully located and offered relocation benefits, including moving expenses and transportation costs, to Plaintiff. On November 27, 2018, Plaintiff filed for his final benefit check pertaining to the move, and received a total of $2,026.00 in relocation cash benefits from HUD. (*Id.* ¶ 15.)

### B.    Procedural History

Plaintiff instituted this lawsuit on November 27, 2017. (ECF No. 1.) The Court granted his Motion for Leave to Proceed *in forma pauperis*. He then filed a Motion for Preliminary Injunction, or Emergency Motion for Temporary Restraining Order. (ECF No. 51.) On June 28, 2018, the Court denied that Motion. (ECF No. 71.) Plaintiff appealed that denial, and on March 20, 2019, the Third Circuit Court of Appeals dismissed the appeal as moot. (USCA Judgment, ECF No. 131)

The Defendants in this case filed Motions to Dismiss at ECF Nos. 84, 86, 88, and 91. Plaintiff filed Responses in Opposition at ECF Nos. 94, 95, 97, and 100. HUD and Jane Miller (collectively, "Federal Defendants") filed a Supplement at ECF No. 127, and Plaintiff responded at ECF No. 129. The Court has reviewed the Motions, Responses, and all briefing in support therein, and the matter is ripe for disposition.[2]

## II.    LEGAL STANDARD

Defendants' Motions to Dismiss arise from Rules 12(b)(1) and 12(b)(6). In reviewing the pending Motions to Dismiss Plaintiff's Fourth Amended Complaint, the Court bears in mind its

---

[2] The Court will exercise its discretion under Federal Rule of Civil Procedure 78(b) and decide the pending motion to dismiss on the briefs and without oral argument. *See generally Fabics v. City of New Brunswick*, 629 F. App'x 196, 199 n.5 (3d Cir. Oct. 19, 2015) ("[A] district court has broad discretion to decide a motion with or without oral argument.")

responsibility to hold *pro se* pleadings to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

### A. Rule 12(b)(1) Motions

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject matter jurisdiction over the plaintiff's claims. Fed. R. Civ. P. 12(b)(1). "At issue . . . is the court's 'very power to hear the case.'" *Judkins v. HT Window Fashions Corp.*, 514 F. Supp. 2d 753, 759 (W.D. Pa. 2007) (quoting *Mortensen v. First Fed. Savings & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). By contrast, a Rule 12(b)(6) motion "tests the legal sufficiency of plaintiff's claim. In other words . . . the question is whether the plaintiff would be able to prevail even if she were able to prove all of her allegations." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006). The party asserting jurisdiction (here, the Plaintiff) bears the burden of proving her claims are properly before the Court. *Dev't Fin. Corp. v. Alpha Housing & Health Care*, 54 F.3d 156, 158 (3d Cir. 1995).

In reviewing a Rule 12(b)(1) motion, the Court must determine whether the attack on its jurisdiction is facial or factual. *Petruska*, 462 F.3d at 302 n.3. A facial attack challenges the Court's jurisdiction without disputing the averred facts in the complaint, and requires the Court to treat those averments as true. *Id.* A factual attack, however, contests the factual allegations underlying the assertion of jurisdiction, either through the filing of an answer or presenting competing facts. *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). When a factual challenge is made, the plaintiff's factual allegations receive no presumption of truthfulness. *Mortensen*, 549 F.2d at 891. "In reviewing a factual attack, the court may consider evidence outside the pleadings." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). In contrast to a 12(b)(6) motion, a Court considering a 12(b)(1) motion may review facts

outside the complaint because a Federal Court must assure itself of its jurisdiction to hear the case. *Boyle v. Governor's Veterans Outreach & Assistance Ctr.*, 925 F.2d 71, 74 (1991).

Here, because Federal Defendants have included with their motion documents outside the pleadings, the Court will consider their motion as a factual attack on subject matter jurisdiction. *See Int'l Ass'n of Machinists & Aerospace Workers v. Nw. Airlines, Inc.*, 673 F.2d 700, 711 (3d Cir. 1982) ("[Defendant's] motion was supported by a sworn statement of facts. It therefore must be construed as a factual, rather than a facial attack on the court's subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)."). The Court may therefore "inquire by affidavits or otherwise, into the facts as they exist." *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947). Here, the Court has considered the submitted documentary evidence and affidavits without resorting to an evidentiary hearing. *See Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997). In considering a Rule 12(b)(1) motion, "the district court may not presume the truthfulness of plaintiff s allegations, but rather must 'evaluat[e] for itself the merits of [the] jurisdictional claims.'" *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

A plaintiff's Article III standing is a threshold jurisdictional issue that this Court must decide before considering other issues in the case. *See Warth v. Seldin*, 422 U.S. 490, 500 (1975). The "irreducible constitutional minimum of standing" requires that Plaintiff demonstrate (a) an "injury in fact" which is "concrete and particularized;" (b) that the injury is "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party;" and (c) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks omitted). "This triad . . . constitutes the core of Article

III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103–04 (1998). These core requirements are usually "substantially more difficult" to establish when the plaintiff is not himself the object of the challenged government action or inaction. *Lujan*, 504 U.S. at 562 (quoting *Allen v. Wright*, 468 U.S. 737, 758 (1984)).

When the case no longer presents a "live" issue, or the parties lack a legally cognizable interest in the outcome, the case becomes moot, divesting the Court of subject-matter jurisdiction. *Wess v. Regal Collections*, 385 F.3d 337, 340 (3d Cir. 2004). A controversy becomes moot if "the acts sought to be enjoined have irretrievably occurred." *N.J. Tpk. Auth. v. Jersey Cent. Power & Light*, 772 F.2d 25, 27 (3d Cir. 1985). A court may not consider a case's merits if the claim for relief is moot.

**B.  Rule 12(b)(6) Motions**

Federal courts must dismiss cases that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Complaints therefore must allege facts "sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). When determining whether dismissal is appropriate, the Court must: "(1) identify[] the elements of the claim, (2) review[] the complaint to strike conclusory allegations, and then (3) look[] at the well-pleaded components of the complaint and evaluat[e] whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). The Court "accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Blanyar v. Genova Prods. Inc.*, 861 F.3d 426,

431 (3d Cir. 2017) (citation omitted). The Court may consider "only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon [those] documents." *Hartig Drug Co. Inc. v. Senju Pharm. Co. Ltd.*, 836 F.3d 261, 268 (3d Cir. 2016) (quoting *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010)).

## III.   <u>DISCUSSION</u>

Plaintiffs' Complaint asserts ten (10) Counts. Counts I and II assert claims against HUD for alleged violations of the Administrative Procedures Act ("APA") and the Due Process Clause of the Fifth Amendment. Count III asserts a *Bivens* claim against Jane Miller, HUD's Field Office Director. Count IV asserts a Fourteenth Amendment Due Process claim against the Housing Authority of the City of Pittsburgh ("HACP"). Count V asserts a § 1983 claim for violations of the Uniform Relocation Act against Reggie Samuel (Leumas Residential's Director) and Caster D. Binion (HACP's Director). Count VI asserts a negligence claim against HACP, Samuel, and Leumas Residential. Count VII alleges a breach of contract claim against Homewood. Count VIII alleges that Homewood violated of Pennsylvania's Landlord and Tenant Act of 1951. Count IX brings a negligence claim against Homewood and Aishel. Count X alleges a violation of the Fair Housing Act by HUD, Homewood, and Aishel.

The Court will address each set of Defendants (Federal Defendants; HACP Defendants; Leumas and Samuel; and Homewood and Aishel) and their respective Motions to Dismiss, in turn.

### A.   <u>Claims against Federal Defendants</u>

Plaintiff avers that he is facing eviction proceedings and potential homelessness. (4th Am. Compl. ¶ 11; Affidavit in Support of Emergency Motion for Preliminary Injunction, ECF

No. 56.) Plaintiff seeks relief in the form of a declaration that HUD violated the Administrative Procedure Act, the Fifth Amendment, and the Fair Housing Act by terminating its HAP Contract with Homewood without following proper procedure. (4th Am. Compl., at 32–33.) He also seeks an injunction ordering HUD to reinstate its HAP Contract with Homewood. (*Id.*) Finally, he seeks "costs, expenses, compensatory and punitive damages." (*Id.* at 33.)

Federal Defendants aver that Plaintiff lacks standing to maintain his claims against them in Counts I–III and X, because he does not allege a concrete and particularized injury traceable to or redressable by HUD, and because his claims are moot. They argue in the alternative that Plaintiff's Fourth Amended Complaint must be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Plaintiff argues that his claims should not be dismissed as moot because declaratory and injunctive relief are still available to him under the APA, because HACP's conduct is capable of repetition yet evading review, and because the matters in his Complaint raise significant public concerns.

As a preliminary matter, Plaintiff has requested that this Court dismiss his *Bivens* claim against Jane E. Miller. (*See* Pl.'s Response to Fed. Defs.' Br., ECF No. 98, at 27.) The Court will grant this request. He also asks the Court to add Jovanna Morales, HUD's Director of Property Disposition Division, and the author of one of the tenant notices, as a defendant. While plaintiffs may add defendants to a civil action, the Federal Rules of Civil Procedure require that "[p]ersons . . . may be joined in one action as defendants if (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Here, Plaintiff has failed to allege anything about Morales other than her title and her authorship of one notice

related to the tenants' relocation. He has not set forth any allegations that would support a right to relief against her, or any factual allegations at all related to Morales. As this is Plaintiff's Fourth Amended Complaint, the Court will deny the request to join Ms. Morales.

The Court will next address Federal Defendants' standing arguments because whether Plaintiff has standing goes to the Court's very power to consider his allegations.

### 1. Mootness

The doctrine of mootness ensures that "the litigant's interest in the outcome continues to exist throughout the life of the lawsuit," *Freedom from Religion Found. Inc. v. New Kensington Arnold Sch. Dist.*, 832 F.3d 469, 476 (3d Cir. 2016) (internal quotation marks omitted), and is "concerned with the court's ability to grant effective relief." *Cty. of Morris v. Nationalist Movement*, 273 F.3d 527, 533 (3d Cir. 2001). A case becomes moot if a plaintiff no longer has a personal stake in the outcome of a suit, such that granting relief "would have no impact on [the plaintiff] whatsoever." *Donovan v. Punxsutawney Area Sch. Bd.*, 336 F.3d 211, 217 (3d Cir. 2003).

Plaintiff supplied a Notice of Termination of Lease that he received from Esperanza. (ECF No. 56, at 2.) The Notice advises Plaintiff that Esperanza is terminating his lease in anticipation of rehabilitating the building. (*Id.*) It also demonstrates that HUD's termination of the HAP contract with Homewood did not force Plaintiff to move out, and that he continued to reside at the Property on a month-to-month lease with Esperanza. (*Id.*)

The facts therefore demonstrate that after HUD terminated the subsidy contract and sold the Property, Esperanza permitted Plaintiff to remain as a tenant with a month-to-month lease. More recently, with HUD's assistance, Plaintiff moved into a newly constructed apartment in Homewood and received over $ 2,0000.00 in benefits.

Federal Defendants argue that because Plaintiff was never forced to move because of HUD's termination of the HAP Contract, and because he did voluntarily move into a new

apartment with HUD's assistance, his claims are moot or he otherwise lacks standing to pursue them. Plaintiff argues that his claims are not moot because HACP's conduct falls into the "capable of repetition yet evading review" exception, and because his Complaint raises matters of significant public interest. The Court concludes that Plaintiff's claims for declaratory and injunctive relief are moot for several reasons.

First, HUD has no relationship with Esperanza. As such, there is no way that HUD could reinstate the HAP Contract at the Property. Nor does the Court have the legal authority to require Esperanza to contract with HUD. (*See* Order, ECF No. 71, at 50–51.) Thus, Plaintiff's requested injunctive relief is impossible to grant and therefore moot. *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016)).

Second, Plaintiff is no longer a tenant of the Property. Entering a new HAP Contract with Esperanza would not terminate his current subsidized tenancy in a nearby property.

Third, Plaintiff is not experiencing any continuing, present adverse effects. "Past exposure to illegal conduct does not in itself show a present case or controversy . . . if unaccompanied by any continuing, present adverse effects." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 699 (3d Cir. 1996). Plaintiff's alleged injuries, that he would experience homelessness and not receive relocation benefits, and that he had not received sufficient notice of HUD's planned relocation, are now mooted by his receipt of a tenant protection voucher and relocation benefits, which he used to move to a nearby property within the same neighborhood.

To the extent that Plaintiff seeks declaratory and injunctive relief in his Fourth Amended Complaint, those claims are moot and this Court lacks jurisdiction to consider them. *See Hayes v. Harvey*, 903 F.3d 32, 40 (3d Cir. 2018) (en banc) ("While this appeal [in a HUD voucher case] was pending, [one of the appellants] moved out of 538B Pine Street. Because he no longer has 'a

legally cognizable interest in the outcome' of the case, his claims are moot and we lack jurisdiction over them.'" (quoting *United Steel Paper & Forestry Rubber Mfg. Allied Indus & Serv. Workers Int'l Union v. Virgin Islands*, 842 F.3d 201, 208 (3d Cir. 2016)). In short, the Court's remedial, equitable declaratory and injunctive powers can do nothing to redress Plaintiff's alleged injuries.

Plaintiff argues that his claims fall within the "capable of repetition, yet evading review" exception to the mootness doctrine and that they are matters of public interest. The "capable of repetition, yet evading review" exception is "extremely narrow," and applies "only where: 1) the challenged action is too short in duration to be fully litigated before the case will become moot; and 2) there is a reasonable expectation that the complaining party will be subjected to the same action again." *Donovan ex rel. Donovan v. Punxsutawney Area Sch. Bd.*, 336 F.3d 211, 217 (3d Cir. 2011). The Third Circuit has recognized this exception when, for example, plaintiffs who were juniors in high school challenged the prohibition of religious elements at their high school's baccalaureate and graduation ceremonies, and two of their parent intervenors had younger children whom the prohibition would affect. *See Brody By & Through Sugzdinis v. Spang*, 957 F.2d 1108, 1115 (3d Cir. 1992).

However, unlike in *Brody* or any other case permitting this narrow exception to mootness, Plaintiff has not demonstrated that he can reasonably expect he will be subjected to the same action again. He has, since the filing of the Fourth Amended Complaint, moved out of the Property and into a new apartment. He argues that nevertheless, because HACP might not pay the rental subsidy for this new apartment, he could be subject to the same action again. This chain of reasoning is too speculative to meet the requirements of the narrow exception to the mootness doctrine. "'Capable of repetition' is not a synonym for 'mere speculation.'" *N.J. Tpk.*

*Auth. v. Jersey Cent. Power & Light*, 772 F.2d 25, 33 (3d Cir. 1985). Plaintiff has alleged no facts that would demonstrate any "reasonable expectation" that the same events would occur. *See id.*

Plaintiff also argues that his case concerns a substantial public interest and should be decided on the merits, because he alleges that HUD violated the United States Constitution and laws, and that Larson committed perjury in her declaration. He also points to the hundreds of families affected by HUD's actions in Pittsburgh's East End. The Court harbors no doubts that agency action affecting low-income families' housing could present a matter of public concern. However, the Third Circuit has "never adopted a standalone public interest exception" to mootness, *Seneca Res. Corp. v. Twp. of Highland*, 863 F.3d 245, 255 (3d Cir. 2017), and has stated that public interest "alone does not impart Article III justiciability when there is 'no reasonable expectation that the wrong will be repeated,'" *N.J. Tpk. Auth.*, 772 F.3d at 30 (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). The Court therefore declines to recognize an exception to mootness in Plaintiff's case, and will dismiss his claims for declaratory and injunctive relief as moot.

However, Goodwin's monetary damages claims cannot be dismissed on mootness grounds because "the availability of damages or other monetary relief almost always avoids mootness . . . . Damages should be denied on the merits, not on the grounds of mootness." *Jersey Cent. Power & Light Co. v. New Jersey*, 772 F.2d 35, 41 (3d Cir. 1985). The Court will therefore consider the Federal Defendants' other standing-based arguments for dismissal.

2. Redressability and Traceability

Federal Defendants also argue that Plaintiff's alleged injuries are traceable to or redressable by HUD. The only injuries that Plaintiff attempts to allege are the termination of his

lease by Esperanza (who is not a party to this lawsuit), having to move from the Property, and potential homelessness. Federal Defendants argue that these are neither traceable to nor redressable by any HUD action. Plaintiff does not directly address this argument, and instead alleges that HUD violated various procedural requirements and argues that those violations suffice to establish Article III standing. The Court concludes the Plaintiff has not adequately alleged redressability and traceability, and he therefore lacks standing to pursue his claims for money damages against the Federal Defendants.

First, Plaintiff has not alleged harms traceable to HUD's actions. Traceability requires a plaintiff to establish that the defendant's actions (and not some third party's) caused the plaintiff's injury. *Toll Bros. v. Twp. of Readington*, 555 F.3d 131, 142 (3d Cir. 2009). "This causal connection need not be as close as the proximate causation needed to succeed on the merits of a tort claim." *Id.* But there must be "a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant," *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000) (internal quotation marks omitted.) Redressability requires a plaintiff to establish a "substantial likelihood that the requested relief will remedy the injury in fact." *Id.* at 771; *see Huntington Branch, NAACP v. Town of Huntington*, 689 F.2d 391, 395 (2d Cir. 1982) (deeming the plaintiff's injury redressable where "[i]nvalidation of the challenged ordinance . . . would tangibly improve the chances of construction").

Plaintiff's alleged harms of moving from the Property and the termination of his lease do not result from HUD's terminating the HAP Contract. Instead, the harm results from Esperanza's actions. Esperanza's independent decision to terminate the lease due to the Property's poor condition is not a choice HUD can control. That decision is only fairly traceable to Homewood's

failure to maintain the Property in adequate conditions. As Plaintiff himself acknowledges, the Property became uninhabitable and unsafe due to *Homewood*'s neglect. He does not dispute that Esperanza's independent actions are the direct cause of these alleged injuries. (*See generally* Pl.'s Response to Federal Defs., ECF No. 98.) But the law requires a "causal connection between the injury and the conduct complained of, *i.e.*, that it is not . . . the result [of] the independent action of some third party not before the court." *Pennsylvania v. United States*, 124 F. Supp. 2d 917, 925 (W.D. Pa. 2000) (quoting *Shurr v. Resorts Int'l Hotel, Inc.*, 196 F.3d 486, 491 (3d Cir. 1999) (internal quotation marks omitted) (emphasis omitted)). Because the termination of the lease does not have a causal connection with Plaintiff's claims of procedural defects in HUD's process of terminating the HAP contract with Homewood, he lacks standing to pursue those claims.[3]

Moreover, Plaintiff's suggested injury that he may become homeless is "mere speculation" given that he has now accepted relocation assistance and moved apartments. *See Finkelman v. NFL*, 810 F.3d 187, 193 (3d Cir. 2016). He therefore can no longer allege a harm based on potentially imminent displacement and homelessness. Even if he could, that harm is not traceable to HUD's termination of a previous HAP contract with Homewood.

Finally, Plaintiff's allegations that HUD violated procedural requirements cannot, without more, constitute injuries sufficient for Article III standing. *See generally Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102 (3d Cir. 2019).

In sum, Plaintiff lacks standing to pursue his claims for money damages against the Federal Defendants, and his claims for declaratory and injunctive relief are moot. The Court therefore lacks jurisdiction to consider Federal Defendants' 12(b)(6) arguments, and will dismiss

---

[3] Federal Defendants also argued that Plaintiff's own actions disrupted the causal connection because he refused HUD's offers of assistance in relocating. (*See* Fed. Defs.' Reply, ECF No. 117, at 5.) However, because Plaintiff has since accepted HUD's assistance, the Court will not make a ruling based on this argument.

the claims against Federal Defendants in Counts I–III and X without prejudice. *See N.J. Physicians, Inc. v. Pres. of U.S.*, 653 F.3d 234, 241 n.8 (3d Cir. 2011) ("[A] District Court's dismissal for lack of subject matter jurisdiction [is] by definition without prejudice.").

### B. Claims against Housing Authority Defendants

Counts IV, V, and IV of Plaintiff's Complaint bring claims against Defendants Housing Authority of the City of Pittsburgh and Caster D. Binion. Count IV asserts that HACP violated the Fourteenth Amendment's Due Process Clause, Count V asserts that Binion violated the Uniform Relocation Assistance and Real Property Acquisitions Act (the "Uniform Act"), and Count VI asserts a negligence claim against HACP and Binion. As noted above, to the extent that any of these claims seek declaratory and/or injunctive relief, they will be dismissed as moot because Plaintiff has voluntarily moved into a new apartment.

Each of Plaintiff's claims against HACP and Binion, although framed under the Fourteenth Amendment, § 1983, and common-law negligence, is linked to his allegation the Housing Authority Defendants failed to provide him with relocation notices, notices of appeal rights, and referrals to comparable apartments, to which he alleges he was entitled under the Uniform Act. (Fourth Amended Compl. ¶ 113–31.)

The Housing Authority Defendants argue that Plaintiff lack standing to assert his claims in Counts IV, V, and VI, because he has not adequately alleged an injury, that is, "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 478 (3d Cir. 2018). They argue that because Plaintiff is not a statutory "displaced person" under the Uniform Act, he lacks standing to assert a claim for those benefits under the Act.

The Uniform Act grants rights to "displaced persons" and places certain obligations on a "displacing agency." 49 C.F.R. § 24.2(a)(9). A "displaced person" is defined as "any person who . . . moves from real property . . . as a result of the acquisition of such real property . . . or as the result of the written order of the acquiring agency to vacate real property, for a program or project undertaken by a Federal agency, or with Federal financial assistance." 42 U.S.C. § 4601(6). The phrase "program or project" means "any activity or series of activities undertaken by a federal agency or with federal financial assistance received or anticipated in any phase of an undertaking in accordance with federal funding agency guidelines." 49 C.F.R. § 24.2(a)(22). The regulations also define "[p]ersons not displaced" in a nonexhaustive list, including "[a] person who is not required to relocate permanently as a direct result of a project," to be determined by the agency. *Id.* § 24.2(9)(ii)(D).

As noted, Plaintiff has since moved out of Homewood and used a Housing Choice Voucher provided by HACP. However, he did not have to move because of the acquisition, rehabilitation, or demolition of a property undertaken by a federal agency or with federal money, but rather because Homewood allowed the Property to fall into disrepair, and Esperanza (a private entity) wants to fix up the building. (Fourth Am. Compl. ¶¶ 65, 91–93.) Plaintiff has not averred that Esperanza will be using any federal money to do so. The only Federal action taken here was HUD's ending of a funding stream to Homewood, not the undertaking of a federally funded project. Additionally, Plaintiff has not alleged facts to support an inference that HUD decided to relocate the tenants as part of a plan by a third party to acquire, rehabilitate, or demolish the Property.

Plaintiff, in response to the Housing Authority Defendants' Motion, claims he has rights under "regulations pertaining to housing and urban development," (ECF No. 105, at 5,) but the

regulations he cites were not promulgated pursuant to the Uniform Act and thus cannot support his claim that Defendants' alleged violation of the Act caused him harm. *See* 24 C.F.R. § 5.403 (defining "displaced family" under the Housing Act of 1937).

Additionally, to the extent Plaintiff premises his claims on the Third Circuit's reasoning in *Massie v. HUD*, the facts in that case differ significantly from those here. *See* 620 F.3d 340, 357–59 (3d Cir. 2010). In *Massie*, the District Court concluded that the plaintiffs were not statutory displaced persons because they were relocated due to the property's poor conditions. *Massie v. HUD*, No. 06-1004, 2008 WL 4443830, at *13 (W.D. Pa. Sept. 26, 2008). The Third Circuit reversed, holding that the foreclosure of the property, and therefore the relocation of the tenants, was part of a bigger plan to redevelop the property in a program for which HUD was providing $3,400,000 in grant money. *Massie*, 620 F.3d at 357–59. Here, no facts suggest that HUD has similar future plans for the Property such that the Uniform Act would apply.

Plaintiff is therefore not a "displaced person" under the statute, and he cannot assert an injury based on the failure of the Housing Authority Defendants to provide him with relocation benefits. He does not have an enforceable federal right regarding any damages allegedly caused by Defendants based on the Uniform Act. He therefore cannot pursue claims under § 1983 because "Congress has foreclosed such enforcement of the statute in the enactment itself," *Wright v. City of Roanoke Redevelopment & Housing Auth.*, 479 U.S. 418, 423 (1987). Nor can his negligence or Due Process claims premised on violations of the Uniform Act survive, because, again, he is not a statutory "displaced person" and therefore lacks standing to bring those claims.

The claims in Counts IV, V, and V will therefore be dismissed without prejudice.

### C.  **Claims against Samuel and Leumas Residential**

Plaintiff brings claims in Counts V and VI, against Defendants Leumas Residential and its Director, Reggie Samuel, under the same theories as against the Housing Authority Defendants. Those claims will also be dismissed without prejudice for lack of standing for the same reasons as described in Section III.B, *supra*.

### D.  **Claims against Homewood Residential and Aishel**

In Counts VII–X, Plaintiff brings claims against Homewood and Aishel. To the extent these claims are premised on federal law, they will be dismissed for lack of standing or for failure to state a claim. To the extent they are based on state law, they will be dismissed without prejudice to being refiled in Pennsylvania state court.

#### 1.  Count X: Violation of Fair Housing Act

Count X of Plaintiff's Complaint alleges that Defendants HUD, Homewood, and Aishel are liable to Plaintiff for violation of the Fair Housing Act because, for instance, they "denied Goodwin the opportunity to participate in the planning group as an integral part of the Section 8 housing program." (4th Amended Compl. ¶ 150.) All of the averments in this Count, save for paragraph 154, relate to co-defendant HUD. To the extent these claims apply to HUD, as noted above, they will be dismissed as moot and for lack of standing.

As to paragraph 154, averring that "Landlord unlawfully made Goodwin's dwelling unit unavailable for rent because of Goodwin's race," Defendants Homewood and Aishel have moved for the Court to strike paragraph 154 under Federal Rule of Civil Procedure 12(f), which permits the Court to "strike from a pleading . . . any redundant, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are generally not favored, but courts have broad discretion in disposing of such motions. *Tennis v. Ford Motor Co.*, 730 F. Supp. 2d 437, 443

(W.D. Pa. 2010). However, "[s]triking some or all of a pleading is therefore considered a drastic remedy to be resorted to only when required for the purposes of justice." *Thornton v. UL Enterp., LLC*, 2010 WL 1005021 at *2 (quoting *DeLa Cruz v. Piccari Press*, 521 F. Supp. 2d 424, 428 (E.D. Pa. 2007) (internal quotation marks omitted)).

The Court will not exercise its discretion to strike Complaint paragraph 154, but will dismiss this claim under Rule 12(b)(6) as to Homewood and Aishel, because Plaintiff has not alleged any facts to support a claim of racial discrimination by Homewood. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (3d Cir. 2009). Moreover, Plaintiff has not alleged that Homewood terminated the Section 8 subsidy to the Property, but rather that HUD terminated the subsidy. As such, this paragraph of the Complaint is purely conclusory and does not satisfy the *Twombly/Iqbal* standard.

To the extent that Count X brings claims against Homewood and Aishel, the Court will dismiss these claims with prejudice. This Court will permit curative amendments "unless amendment would be inequitable or futile." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008). Plaintiff has already taken three opportunities to amend his Complaint, as the Court is now considering his Fourth Amended Complaint. As it stands, that Complaint does not contain a well-pleaded allegation in Count X against Homewood and Aishel. To the contrary, his Complaint alleges that his (former) apartment was unavailable for rent because HUD terminated the HAP Contract and because the new owner sought to rehabilitate the building. He has not alleged any facts related to racial discrimination other than the mere fact of his race. Nor has Plaintiff referred to any facts in his brief in opposition to Homewood and Aishel's Motion that, if added to a potential *Fifth* Amended Complaint, would state a plausible claim for relief. Instead,

he repeats the same conclusory allegation that Homewood violated the Fair Housing Act, without factual explanation. As such, the Court concludes that permitting Plaintiff leave to amend his Fourth Amended Complaint would be futile and will dismiss Count X, as against Homewood and Aishel, with prejudice.

### 2. Counts VII–IX: State Law Claims

Count VII lies against Homewood only. Plaintiff avers that Homewood was required to maintain the Property, and that it breached the lease agreement when it failed to maintain "decent, safe, and sanitary" property conditions. According to the 2017 REAC inspection report, Plaintiff's unit had roof and wall damage, and Plaintiff avers that due to the poor conditions of the roof, damage was done to his computer, desk, television, bedroom chair, and bed. He seeks compensatory damages in the amount of $620 and punitive damages against Homewood. In Count VIII, Plaintiff attempts to assert a claim against Homewood for violations of the Landlord and Tenant Act, referring to the landlord's duties under 68 Pa. Cons. Stat. Ann §§ 250.502-A & 250.501(c). In Count IX, Plaintiff attempts to set forth a claim for negligence.

Once the claims giving rise to federal jurisdiction have been dismissed, a district court has discretion to remand an action to state court. *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988). When exercising this discretion, courts should consider "principles of economy, convenience, fairness, and comity." *Id.* The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, accordingly declines to rule on Homewood and Aishel's Motion to Dismiss those claims. Evaluating the *Carnegie–Mellon* factors, there is no evidence of manipulation of the forum here. And Plaintiff originally filed this case in federal court. However, the remaining state law claims arise from landlord-tenant law, and in the interest of comity and judicial economy, the Court concludes they should be resolved in state court. *See*

*Markowitz v. Northeast Land Co.*, 906 F.2d 100, 106 (3d Cir.1990) ("[T]he rule within this Circuit is that once all claims with an independent basis of federal jurisdiction have been dismissed the case no longer belongs in federal court.").

## IV.    **CONCLUSION**

Federal Defendants' Motion to Dismiss, Housing Authority Defendants' Motion to Dismiss, and Samuel's Motion to Dismiss will be granted. Plaintiff's claims in Counts I—VI and X, against HUD, Jane Miller, HACP, Caster Binion, and Reggie Samuel, will all be dismissed without prejudice. Homewood and Aishel's Motion to Dismiss will be granted in part and denied in part. To the extent Plaintiff's claims in Counts VII–IX allege violations of federal law against Homewood and Aishel, those claims will be dismissed without prejudice. Count X will be dismissed with prejudice as to Homewood and Aishel. To the extent that Plaintiffs' claims in Counts VII–IX seek remedies under Pennsylvania state law, those claims are dismissed without prejudice to their being refiled in state court.

An appropriate Order will follow.


s/ Mark R. Hornak

Mark R. Hornak
Chief United States District Judge


Dated:  March 29, 2019
cc:      All counsel of record